Judy A. BAUER, Plaintiff,

v.

METZ BAKING COMPANY, Defendant.

No. C 98–4058–MWB.

United States District Court, N.D. Iowa, Western Division.

Aug. 4, 1999.

Shelly A. Horak, Sioux City, Iowa, for Judy A. Bauer.

Robert L. Lepp (argued), Mary L. Hewitt of McGill, Gotsdiner, Workman & Lepp, P.C., Omaha, NE, John D. Mayne, Mayne & Mayne, Sioux City, Iowa, for Metz Baking Co.

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BENNETT, District Judge.

## TABLE OF CONTENTS

I. *INTRODUCTION* ...................................................898
 A. *Procedural Background* ....................................898
 B. *Factual Background* .......................................898

II. *LEGAL ANALYSIS* ..............................................900
 A. *Standards For Summary Judgment* .........................900
 B. *Direct Evidence Of Discrimination*
 1. *The "direct evidence" paradigm* .....................901
 2. *Bauer's "direct evidence"* ..........................903
 a. *The speaker* ....................................903
 b. *The content* ....................................904
 c. *The causal link* ................................905
 C. *Circumstantial Evidence Of Discrimination* ...............906
 1. *The circumstantial evidence paradigm* ...............906
 2. *Bauer's circumstantial evidence* ....................907
 a. *Bauer's prima facie case* .......................907
 b. *Metz Baking's legitimate, non-discriminatory reason* ............908
 c. *Bauer's showing of pretext* .....................909

III. *CONCLUSION* .................................................910

Perhaps like beauty, discriminatory intent is in the eye of the beholder. To the plaintiff employee in this case under the Age Discrimination in Employment Act

(ADEA), 29 U.S.C. § 621 *et seq.*, her immediate supervisor's question, "Wouldn't it be nice if you'd retire and then you could work in your garden?" is direct evidence of age discrimination, or at least evidence of discriminatory intent demonstrating that the employer's proffered legitimate reason for terminating the plaintiff was pretextual. To the defendant employer, the supervisor's question is an innocuous "stray remark" with no significance to its decision to terminate the plaintiff five months later for persistent poor performance. The court must decide on the employer's motion for summary judgment whether there is sufficient factual dispute on the question of discriminatory intent to allow this case to go to a jury.

## I. INTRODUCTION

### A. Procedural Background

Plaintiff Judy A. Bauer filed her complaint in this matter on June 2, 1998, against her former employer, defendant Metz Baking Company, asserting that she was terminated from her employment on April 24, 1997, in violation of the ADEA. She seeks reinstatement and damages on her claim of age discrimination, as well as liquidated damages for a "willful" violation of the ADEA, arising from Metz Baking's decision to terminate her and force her into involuntary retirement. Metz Baking answered the complaint on July 27, 1998, asserting that Bauer was terminated for good cause unrelated to her age, specifically, continued deficient performance after warnings that improvement was required. A jury trial in this matter is scheduled to begin on November 8, 1999.

However, on April 30, 1999, Metz Baking moved for summary judgment on Bauer's age discrimination claim, asserting that there is insufficient evidence of discriminatory intent for this case to go to a jury. Metz Baking asserts first that Bauer has no direct evidence of age discrimination. Moreover, Metz Baking asserts that, under the *McDonnell Douglas* burden-shifting paradigm for circumstantial evidence cases, Bauer cannot generate a *prima facie* case of age discrimination, because she cannot show that she was meeting her employer's qualification requirements and legitimate expectations for her position. Finally, Metz Baking argues that Bauer's claim fails at the third stage of the burden-shifting analysis, because Bauer has failed to present any evidence sufficient to raise a jury question that Metz Baking's proffered legitimate, non-discriminatory reason for its decision to fire her is a pretext for age discrimination. Bauer resisted Metz Baking's motion for summary judgment on each of the grounds asserted on May 25, 1999.

The court heard oral arguments on Metz Baking's motion for summary judgment on July 27, 1999. Plaintiff Judy A. Bauer was represented by Shelly A. Horak of Sioux City, Iowa. Defendant Metz Baking Company was represented by Robert L. Lepp, who argued the motion, and Mary L. Hewitt of McGill, Gotsdiner, Workman & Lepp, P.C., in Omaha, Nebraska, and John D. Mayne of Mayne & Mayne in Sioux City, Iowa.

### B. Factual Background

The court will discuss here only the nucleus of undisputed facts pertinent to the present motion for summary judgment. In its legal analysis, the court will address where necessary Bauer's assertion of genuine issues of material fact that may preclude summary judgment on her age discrimination claim.

Metz Baking hired Judy Bauer on March 14, 1977, as a receptionist/typist in its Sioux City, Iowa, facility. Eventually, in April of 1995, Metz Baking assigned Bauer to a newly combined position of receptionist and order desk clerk, where Bauer remained until she was terminated on April 24, 1997. Bauer's job performance reviews in her various positions during the twenty years she was employed by Metz Baking were somewhat uneven. In 1979, 1987, and 1988, for example,

Bauer received above-average overall annual performance evaluations. However, in 1984, 1985, 1986, and 1992, she received only average annual evaluations, and from 1993 on received "below standard" annual evaluations.

Prior to the fall of 1996, Bauer received occasional "warnings" or other corrective disciplinary notices from her various supervisors. These disciplinary actions and notices included warnings for tardiness, failure to complete tasks, and other mistakes in the performance of her job duties. From the fall of 1996 on, however, such warnings became more frequent and more serious. For example, on October 1, 1996, Bauer received a note from her immediate supervisor, Kathy Kelly, the Office Manager, concerning tardiness. On November 11, 1996, Kelly gave Bauer a "Corrective Discipline Action Notice" for unsatisfactory job performance, stemming from her failure to put telephone "T-com" switches up before leaving, which caused 26 route drivers to be unable to call in, and also stemming from complaints about the unprofessional manner in which Bauer had answered or handled various telephone calls. On March 10, 1997, Kelly gave Bauer another Corrective Discipline Action Notice for unsatisfactory performance related to failure to complete tasks, improper handling of telephone calls, and improper documentation of orders, including a warning that the next disciplinary step would be a suspension. On March 27, 1997, Kelly gave Bauer another Corrective Discipline Action Notice notifying her of her suspension for three days for unsatisfactory performance related to unprofessional handling of telephone calls. At the time of this notice, Bauer was given a "Last Chance Agreement," which listed specific expectations for improving her job performance, and stated that failure to meet these expectations at any time during the next twelve months would result in her termination. Bauer signed the Last Chance Agreement on April 3, 1997.

Matters came to a head on April 14, 1997, when Kelly gave Bauer a further Corrective Discipline Action Notice advising her that she would be suspended for nine days for unsatisfactory performance of her order clerk duties on April 3, 8, and 9, and improper handling of telephone calls. Bauer admits the order clerk errors stated in this notice. The errors identified in the notice were in violation of the Last Chance Agreement, and the notice specifically stated that the suspension was subject to a review of Bauer's personnel record and a decision regarding her continued employment.

On April 24, 1997, Sandy Francis, Metz Baking's Human Resources Manager, sent Bauer a notice informing her that, upon review of her employment record, she was being terminated for continued performance deficiencies. Bauer was 58 years old at the time of her termination. Pursuant to Metz Baking's employment policies, the decision to terminate Bauer was made by the Director of Human Resources, at that time, Gary Wright, then 38 years old, after he reviewed Bauer's personnel file and consulted with Sandy Francis (then age 40), Kathy Kelly (then age 33), and Charlotte Adams, the Controller at Metz Baking's Sioux City, Iowa, facility (then age 43).

Bauer was replaced by Bonnie Langley, then age 35. Langley, however, was also terminated just months later, in September of 1997, for performance deficiencies similar to those charged against Bauer. Langley's replacement, then age 39, voluntarily left on October 15, 1997. Two other persons subsequently filled Bauer's position, one in her late twenties, who left for maternity leave after about six months and did not return to work, and one in her mid-thirties, who continues to work for Metz Baking, although the position Bauer formerly filled no longer exists, following a restructuring of the Sioux City facility. Metz Baking points out, and Bauer does not dispute, that three people in their thirties and early forties who worked under

Kathy Kelly were terminated at various times for performance deficiencies.

## II. LEGAL ANALYSIS

### A. Standards For Summary Judgment

On Metz Baking's motion for summary judgment, the undisputed facts recounted above as well as the parties' factual disputes must be viewed through the lens of Rule 56 of the Federal Rules of Civil Procedure. This court has considered in some detail the standards applicable to motions for summary judgment pursuant to Rule 56 in a number of prior decisions. *See, e.g., Swanson v. Van Otterloo,* 993 F.Supp. 1224, 1230–31 (N.D.Iowa 1998); *Dirks v. J.C. Robinson Seed Co.,* 980 F.Supp. 1303, 1305–07 (N.D.Iowa 1997); *Laird v. Stilwill,* 969 F.Supp. 1167, 1172–74 (N.D.Iowa 1997); *Rural Water Sys. # 1 v. City of Sioux Ctr.,* 967 F.Supp. 1483, 1499–1501 (N.D.Iowa 1997); *Tralon Corp. v. Cedarapids, Inc.,* 966 F.Supp. 812, 817–18 (N.D.Iowa 1997); *Security State Bank v. Firstar Bank Milwaukee, N.A.,* 965 F.Supp. 1237, 1239–40 (N.D.Iowa 1997); *Lockhart v. Cedar Rapids Community Sch. Dist.,* 963 F.Supp. 805 (N.D.Iowa 1997). Thus, the court will not consider those standards in detail here. Suffice it to say that Rule 56 itself provides, in pertinent part, as follows:

Rule 56. Summary Judgment

(b) For Defending Party. A party against whom a claim . . . is asserted . . . may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon. . . . *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

FED.R.CIV.P. 56(b) & (c) (emphasis added). Applying these standards, the trial judge's

function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.,* 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). As to whether a factual dispute is "material," the Supreme Court has explained, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Beyerbach v. Sears,* 49 F.3d 1324, 1326 (8th Cir.1995); *Hartnagel,* 953 F.2d at 394.

Because this is an employment discrimination case, it is well to remember that the Eighth Circuit Court of Appeals has cautioned that "summary judgment should seldom be used in employment-discrimination cases." *Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir.1994) (citing *Johnson v. Minnesota Historical Soc'y,* 931 F.2d 1239, 1244 (8th Cir.1991); *Hillebrand v. M–Tron Indus., Inc.,* 827 F.2d 363, 364 (8th Cir.1987), *cert. denied,* 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989)); *see also Snow v. Ridgeview Medical Ctr.,* 128 F.3d 1201, 1205 (8th Cir.1997) (citing *Crawford*); *Helfter v. United Parcel Serv., Inc.,* 115 F.3d 613, 615 (8th Cir. 1997) (quoting *Crawford*); *Chock v. Northwest Airlines, Inc.,* 113 F.3d 861, 862 (8th Cir.1997) ("We must also keep in mind, as our court has previously cautioned, that summary judgment should be used sparingly in employment discrimination cases," citing *Crawford*); *Smith v. St. Louis Univ.,* 109 F.3d 1261, 1264 (8th Cir. 1997) (quoting *Crawford*); *Hardin v. Hussmann Corp.,* 45 F.3d 262 (8th Cir. 1995) ("summary judgments should only

be used sparingly in employment discrimination cases," citing *Haglof v. Northwest Rehabilitation, Inc.*, 910 F.2d 492, 495 (8th Cir.1990); *Hillebrand*, 827 F.2d at 364). Summary judgment is appropriate in employment discrimination cases only in "those rare instances where there is no dispute of fact and where there exists only one conclusion." *Johnson*, 931 F.2d at 1244; *see also Webb v. St. Louis Post–Dispatch*, 51 F.3d 147, 148 (8th Cir.1995) (quoting *Johnson*, 931 F.2d at 1244); *Crawford*, 37 F.3d at 1341 (quoting *Johnson*, 931 F.2d at 1244). To put it another way, "[b]ecause discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant." *Crawford*, 37 F.3d at 1341 (holding that there was a genuine issue of material fact precluding summary judgment); *accord Snow*, 128 F.3d at 1205 ("Because discrimination cases often turn on inferences rather than on direct evidence, we are particularly deferential to the nonmovant," citing *Crawford* ); *Webb v. Garelick Mfg. Co.*, 94 F.3d 484, 486 (8th Cir.1996) (citing *Crawford*, 37 F.3d at 1341); *Wooten v. Farmland Foods*, 58 F.3d 382, 385 (8th Cir.1995) (quoting *Crawford*, 37 F.3d at 1341); *Johnson*, 931 F.2d at 1244.

However, the Eighth Circuit Court of Appeals has also observed that, "[a]lthough summary judgment should be used sparingly in the context of employment discrimination cases, *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994), the plaintiff's evidence must go beyond the establishment of a prima facie case to support a reasonable inference regarding the alleged illicit reason for the defendant's action." *Landon v. Northwest Airlines, Inc.*, 72 F.3d 620, 624 (8th Cir.1995) (citing *Reich v. Hoy Shoe Co.*, 32 F.3d 361, 365 (8th Cir.1994)); *accord Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1134 (8th Cir. 1999) (observing that the burden-shifting framework of *McDonnell Douglas* must be used to determine whether summary judg-

ment is appropriate), *petition for cert. filed*, 67 U.S.L.W. 3758 (June 2, 1999) (No. 98–1938). Furthermore, "[s]ummary judgment is proper when a plaintiff fails to establish a factual dispute on an essential element of her [or his] claim." *Snow*, 128 F.3d at 1205; *accord Helfter*, 115 F.3d at 615; *Bialas v. Greyhound Lines, Inc.*, 59 F.3d 759, 762 (8th Cir.1995).

With these standards in mind, the court turns to consideration of the parties' arguments for and against summary judgment in this case.

### B. Direct Evidence Of Discrimination

Metz Baking asserts first that Bauer has no direct evidence of age discrimination, just evidence of stray remarks concerning Bauer's retirement that, although made by Bauer's direct supervisor, were made by someone without the power to fire Bauer, in the context of a casual conversation, unrelated to any decision-making process, and at a time remote from the decision to fire Bauer. Bauer counters that she has direct evidence of discrimination, which she identifies as the three comments made by Kathy Kelly between September of 1996 and November 11, 1996. The comments by Kelly were to the effect that wouldn't Bauer like to retire so that she could work in her garden or travel, and a comment in a similar vein that Bauer does not specifically remember. Bauer asserts that after she indicated no desire to retire, Kelly instituted a campaign of complaints and criticisms about Bauer's job performance aimed at forcing Bauer to quit or getting her fired. Bauer asserts that, although Kelly could not directly fire Bauer, she could press for Bauer's dismissal and her complaints about Bauer were the basis upon which any decision to terminate Bauer would have been made.

### 1. The "direct evidence" paradigm

A plaintiff asserting employment discrimination on the basis of age or some other protected characteristic must make

out a submissible case "under either the direct evidence framework of *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), or the indirect evidence, burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1156 (8th Cir.1999).

"When a plaintiff puts forth direct evidence that an illegal criterion, such as age [or sex], was used in the employer's decision to terminate the plaintiff," we apply the standards enunciated in *Price Waterhouse v. Hopkins*, as modified by § 107 of the Civil Rights Act of 1991, 42 U.S.C. § 2000e–2(m). *Fast v. Southern Union Co.*, 149 F.3d 885, 889 (8th Cir. 1998). Under this modified *Price Waterhouse* standard, a defendant is liable for discrimination upon proof by direct evidence that an employer acted on the basis of a discriminatory motive, and proof that the employer would have made the same decision absent the discriminatory motive is only relevant to determining the appropriate remedy. *See id.*

*Breeding*, 164 F.3d at 1156. Metz Baking specifically asserts that Bauer fails the first step under the *Price Waterhouse* paradigm, because she has failed to present any direct evidence that Metz Baking acted on the basis of a discriminatory motive. The Eighth Circuit Court of Appeals has considered what constitutes "direct evidence" under the *Price Waterhouse* paradigm in a number of recent decisions. " 'In differentiating between direct and indirect evidence of age discrimination, we must, in part, distinguish comments which demonstrate a discriminatory animus in the decisional process from stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process.' " *Breeding*, 164 F.3d at 1157 (quoting *Fast*, 149 F.3d at 889, with internal quotation marks and citations omitted, as in *Breed-*

*ing* ). The Eighth Circuit Court of Appeals has also explained "direct evidence" in the context of sex discrimination, as follows:

Direct evidence is evidence of conduct or statements by persons involved in the decisionmaking process that is sufficient for a factfinder to find that a discriminatory attitude was more likely than not a motivating factor in the employer's decision. *See Browning v. President Riverboat Casino–Missouri, Inc.*, 139 F.3d 631, 634 (8th Cir.1998). Such evidence might include proof of an admission that gender was the reason for an action, discriminatory references to the particular employee in a work context, or stated hostility to women being in the workplace at all. *Compare id.* at 635; *Stacks v. Southwestern Bell*, 27 F.3d 1316, 1323 (8th Cir.1994) *with Rivers–Frison v. Southeast Mo. Community Treatment Ctr.*, 133 F.3d 616, 619 (8th Cir.1998). Kerns relies on evidence that Castiglioni made sexist and sexual comments and that the company was aware of at least some of these. None of the statements related either to Kerns herself or the abilities of women employees, however. There is no direct evidence that Castiglioni took disciplinary actions against Kerns because she is female, and therefore the *McDonnell Douglas* analysis should be used rather than the mixed motive test of *Price Waterhouse v. Hopkins*, 490 U.S. 228, 248–50, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).

*Kerns v. Capital Graphics, Inc.*, 178 F.3d 1011, 1018 (8th Cir.1999); *accord Simmons v. Oce–USA, Inc.*, 174 F.3d 913, 915 (8th Cir.1999) (same standards in a race discrimination case); *Walton v. McDonnell Douglas Corp.*, 167 F.3d 423, 426 (8th Cir. 1999) (age discrimination). Furthermore,

"Not all comments that may reflect a discriminatory attitude are sufficiently related to the adverse employment action in question to support such an inference." *Walton v. McDonnell Douglas Corp.*, 167 F.3d 423, 426 (8th Cir.1999).

Stray remarks made in the workplace are not sufficient to establish a claim of discrimination. *See Beshears v. Asbill,* 930 F.2d 1348, 1354 (8th Cir.1991) (quoting *Price Waterhouse,* 490 U.S. at 277, 109 S.Ct. 1775).

*Simmons,* 174 F.3d at 915–16; *accord Walton,* 167 F.3d at 426. Where comments are not "close in time" to an adverse employment decision, the plaintiff "must establish a causal link between the comments and his [or her] termination." *Id.* at 916 (citing *Hutson v. McDonnell Douglas Corp.,* 63 F.3d 771, 779 (8th Cir.1995); *see also Walton,* 167 F.3d at 426–27 (even if a comment might evidence discriminatory animus in some context, if the comment is distant in time from adverse action, and there is no evidence of a "causal link" between the comment and the decisional process leading to the adverse action, a direct evidence claim fails)). "Absent a causal link between the [derogatory] comments and the adverse employment decision, [the speaker's] derogatory language is best classified as 'statement[s] by [a] decisionmaker[ ] unrelated to the decisional process.'" *Id.* (quoting *Rivers–Frison v. Southeast Mo. Community Treatment Ctr.,* 133 F.3d 616, 619 (8th Cir.1998), in turn quoting *Price Waterhouse,* 490 U.S. at 277, 109 S.Ct. 1775); *Walton,* 167 F.3d at 426 ("For example, 'stray remarks in the workplace,' 'statements of nondecisionmakers,' or 'statements by decisionmakers unrelated to the decisional process itself' will not suffice.") (some internal quotation marks omitted); *Breeding,* 164 F.3d at 1157 (comments that were "not related to the decisional process" were not sufficient).

## 2. Bauer's "direct evidence"

Again, Bauer asserts that three comments made by her direct supervisor, Kathy Kelly, in the fall of 1996 are direct evidence that she was terminated because of her age in the late spring of 1997. The comments by Kelly at issue here were to the effect that wouldn't Bauer like to retire so that she could work in her garden or travel, and a comment in a similar vein that Bauer does not specifically remember. The precedents cited above require the court to analyze these comments according to three criteria: (1) the speaker; (2) the content; and (3) the causal connection between the comments and the adverse employment decision.

### a. The speaker

The court turns first to the identity of the "speaker" of the comments allegedly constituting direct evidence of discrimination, because, as noted above, "[d]irect evidence is evidence of conduct or statements by persons involved in the decisionmaking process." *Kerns,* 178 F.3d at 1017; *Simmons,* 174 F.3d at 915; *Walton,* 167 F.3d at 426. The statements purportedly constituting direct evidence of age discrimination in this case are all attributed to Kathy Kelly, Bauer's immediate supervisor. Metz Baking argues, however, that Kelly was not a "decisionmaker" with regard to Bauer's termination, because the authority to terminate Bauer under company policy resided only with the Director of Human Resources. Bauer asserts that Kelly was nonetheless involved in the decisionmaking process.

The court notes first that the requirement is not that the speaker or actor be *the* "decisionmaker," only that he or she be *"involved* in the decisionmaking process." *Kerns,* 178 F.3d at 1017 (emphasis added); *Simmons,* 174 F.3d at 915; *Walton,* 167 F.3d at 426. The court concludes that, at a minimum, there is a genuine issue of material fact as to whether Kelly was a "person[ ] involved in the decisionmaking process" that led to Bauer's termination. *Kerns,* 178 F.3d at 1017. Such a genuine issue of material fact precludes summary judgment in Metz Baking's favor on the basis of the identity of the speaker here. *See* FED.R.CIV.P. 56(c) (to prevail on a motion for summary judgment, the movant must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law"). Specifically, Bauer has pointed to evidence that the proximate basis for her termination was disciplinary notices, negative performance evaluations, and a specific recommendation by Kelly, even if notices of performance deficiencies were to some extent based on the complaints or observations of others. Furthermore, Metz Baking acknowledges that although it is an undisputed fact that Bauer was terminated by Gary Wright, the Director of Human Resources, it is also undisputed that Wright made his decision only after he reviewed Bauer's personnel file, containing records of Kelly's deficiency notices about Bauer's performance, and consulted with three other people, including Kathy Kelly. Thus, it appears from the record thus far presented that Kelly was an integral part of, and certainly "involved in," the decisionmaking process, even if she did not have the authority to make the actual termination decision. *Kerns,* 178 F.3d at 1017–18.

Furthermore, the simple "bright line" rule Metz Baking appears to assert—that a person without the technical authority to make a termination decision cannot be the source of comments or conduct constituting "direct evidence" of discrimination—simply does not fit with the reality that recommendations of direct supervisors are most often the basis for adverse employment decisions, even if ultimate decisions are made higher up, and certainly doesn't fit with the reality that the decisionmaking process here worked in that very way. Employers should not be able to escape "direct evidence" claims simply by having a person higher up the hierarchy "rubber stamp" an employment decision that is largely or completely based on the recommendations of a direct supervisor who has expressed a discriminatory animus toward a targeted employee, but who could conceal that animus with a carefully concocted "paper trail" to justify adverse recommendations about the targeted employee. *Cf. Sherrod v. American Airlines, Inc.,* 132 F.3d 1112, 1122 (5th Cir.1998) (an employer cannot sever the causal link between an employee's complaint about discrimination and retaliatory conduct by having a representative who does not know about the complaint merely "rubber stamp" a recommendation to terminate the employee made by another representative who has knowledge of the employee's complaint).

Metz Baking is not entitled to summary judgment on Bauer's "direct evidence" claim simply because Kelly was not the ultimate decisionmaker in Bauer's termination, where Kelly was Bauer's direct supervisor, and there is at least a genuine issue of material fact that she was "involved in the decisionmaking process." *Kerns,* 178 F.3d at 1017.

#### b. *The content*

■ Next, the court turns to the content of the comments specifically identified by Bauer as her "direct evidence" of discrimination. This criterion is obviously relevant, because "[d]irect evidence is evidence of conduct or statements by persons involved in the decisionmaking process *that is sufficient for a factfinder to find that a discriminatory attitude was more likely than not a motivating factor in the employer's decision." Kerns,* 178 F.3d at 1017 (emphasis added). Although Bauer asserts that Kelly's comments reflect an age-based discriminatory animus, the court concludes that the comments alleged are so innocuous that they fail to raise even a jury question as to whether "a discriminatory attitude was more likely than not a motivating factor in the employer's decision," *id.,* and hence summary judgment on Bauer's "direct evidence" claim is appropriate. FED.R.CIV.P. 56(c) (summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law").

■ The comments in question here do not constitute "an admission that [the plaintiff's age] was the reason for an action, discriminatory references to the particular employee in a work context, or stated hostility to [people of the plaintiff's

age] being in the workplace at all." *See Kerns*, 178 F.3d at 1017 (cast in terms of gender in the original). Although the comments may have related to Bauer herself, they certainly do not relate to the abilities of older employees. *See id.; Walton*, 167 F.3d at 427 (comments did not show discriminatory animus, because they could not "reasonably be understood as derogatory toward older employees generally"). Indeed, the court concludes that a reasonable jury would more likely than not find the comments entirely innocuous; certainly, they are far from "sufficient for a factfinder to find that a discriminatory attitude was more likely than not a motivating factor in the employer's decision." *Kerns*, 178 F.3d at 1017. It would seem that questions about what someone would like to do when he or she retires are as commonly directed at persons in their twenties as to persons in their late fifties; indeed, such comments are the standard fare of casual conversations among employees of all ages, probably second only to questions about what one would do with a million dollars or the winning "Powerball" lottery ticket. Far more pointed inquiries about an older employee's retirement plans have been held not to constitute age discrimination. For example, in *Montgomery v. John Deere & Co.*, 169 F.3d 556 (8th Cir.1999), the court held that the fact that an employee was regularly offered early retirement does not by itself violate the ADEA, because an employer may make reasonable inquiries into retirement plans of its employees and a plaintiff should not be able to rely on those inquiries to prove intentional discrimination, unless the inquiries are so unnecessary and excessive as to constitute evidence of discriminatory intent. *Montgomery*, 169 F.3d at 560; *see also Burns v. AAF–McQuay, Inc.*, 166 F.3d 292, 295 (4th Cir. 1999) (on a hostile environment age discrimination claim, the court held that comments including inquiry about the plaintiff's retirement plans, comments that the plaintiff was acting like a child, and comments that the plaintiff did not fit in with

the employer's group, were "scant [in] number and generally mild [in] nature," and therefore insufficient to establish an objectively hostile environment). The court in *Montgomery* also rejected the sufficiency of far more pointed references to the plaintiff's age, holding that repeated references to the plaintiff by his supervisor and others as "old fart" were not a sufficient basis for an inference of age discrimination. *See id.* (citing *Ryther v. KARE 11*, 108 F.3d 832, 842–44 (8th Cir.), *cert. denied*, 521 U.S. 1119, 117 S.Ct. 2510, 138 L.Ed.2d 1013 (1997), a "pretext" case, in which similar comments were held to be insufficient to raise an inference of age discrimination).

Thus, Metz Baking is entitled to summary judgment on Bauer's "direct evidence" claim, because Bauer has failed to present any "direct evidence" of discriminatory animus.

#### c. *The causal link*

■ Even if there is some sinister age-discriminatory animus lurking in a casual inquiry about what one would do if one was retired, Bauer has also failed to generate a genuine issue of material fact that the comments in question here bear the necessary causal connection to the adverse employment decision several months later. Again, "[n]ot all comments that may reflect a discriminatory attitude are sufficiently related to the adverse employment action in question to support ... an inference [of discriminatory intent]." *Walton*, 167 F.3d at 426; *see also Simmons*, 174 F.3d at 915 (quoting *Walton*). Where, as here, comments are not "close in time" to an adverse employment decision, the plaintiff "must establish a causal link between the comments and his [or her] termination." *Id.* at 916 (citing *Hutson*, 63 F.3d at 779); *see also Walton*, 167 F.3d at 426–27.

■ Bauer has attempted to forge such a "causal link" between Kelly's questions and the decision to terminate her several months later by asserting that Kelly

stepped up her criticisms of Bauer with the goal of getting her terminated after Bauer expressed no interest in retiring in response to Kelly's questions. However, Metz Baking points out that the comments were not made in connection with any disciplinary meeting or action or in the context of any other employment evaluation, but that Bauer instead admits the comments were made casually, in passing, on the order of inquiries about what Bauer was going to have for dinner that night.

Bauer's argument fails, in part, because Kelly's and other supervisor's written criticisms of Bauer's job performance, on precisely the same grounds, also occurred months and sometimes years before Kelly asked the questions proffered here as direct evidence of age discrimination. Furthermore, Metz Baking is correct that the comments or questions were not made in the context of any disciplinary meeting or action or in the context of any other employment evaluation, such that they lack any sufficient relationship to the adverse employment action in question to support an inference of discriminatory intent. *Walton*, 167 F.3d at 426; *see also Simmons*, 174 F.3d at 915 (quoting *Walton*). The chain of inferences upon which Bauer's "causal link" argument relies is itself indicative of the fact that Kelly's questions simply are not "direct" evidence of discriminatory intent. At most, Bauer has presented " 'statement[s] by [a] decisionmaker[ ] unrelated to the decisional process.' " *Simmons*, 174 F.3d at 916 (quoting *Rivers–Frison*, 133 F.3d at 619).

Therefore, Metz Baking is entitled to summary judgment that Bauer has not presented any "direct evidence" of age discrimination, and thus cannot proceed under the *Price Waterhouse* paradigm, or obtain the relief that would flow from proof of mixed motives for Bauer's termination. *See Breeding*, 164 F.3d at 1156 (pointing out that proof of a mixed motives case under the 1991 amendments to 42 U.S.C. § 2000e–2(m) makes proof that the employer would have made the same deci-

sion absent the discriminatory motive only relevant to determining the appropriate remedy).

### C. Circumstantial Evidence Of Discrimination

#### 1. The circumstantial evidence paradigm

Where there is no direct evidence of discrimination, the *McDonnell Douglas* analysis should be used rather than the mixed motive test of *Price Waterhouse v. Hopkins*. *See Kerns*, 178 F.3d at 1017–18; *Simmons*, 174 F.3d at 916 (where the plaintiff failed to establish direct evidence of discrimination, the case was analyzed in the alternative under the *McDonnell Douglas* "circumstantial evidence" paradigm); *Breeding*, 164 F.3d at 1156. Under the *McDonnell Douglas* analytical paradigm for circumstantial evidence cases, the plaintiff must first establish the elements of a *prima facie* case of discrimination; the employer must then proffer a legitimate, non-discriminatory reason for its adverse employment action against the plaintiff; and finally, the plaintiff must overcome the employer's legitimate reason with sufficient evidence that the employer's reason is a pretext for discrimination to survive summary judgment. *See Simmons*, 174 F.3d at 916; *accord Kerns*, 178 F.3d at 1018 ("In addition to a *prima facie* case, *McDonnell Douglas* requires a plaintiff to show an employer's legitimate, non-discriminatory reason for its action was pretextual."); *Walton*, 167 F.3d at 427 (identifying the steps in the burden-shifting analysis); *Breeding*, 164 F.3d at 1156 (identifying the requirements of each step of the burden-shifting analysis). If the plaintiff's *prima facie* case is weak, the quantum of additional evidence necessary to establish pretext for summary judgment purposes increases. *See, e.g., Montgomery*, 169 F.3d at 560 (where the plaintiff's *prima facie* case was "at best, weak," and he failed to come forward with any evidence of pretext besides derogatory name calling, he had failed to produce sufficient evidence of pretext to survive summary

judgment); *Rothmeier v. Investment Advisers, Inc.*, 85 F.3d 1328, 1336–37 (8th Cir.1996) (at the third stage of the analysis, a "plaintiff can avoid summary judgment only if the evidence considered in its entirety (1) creates a fact issue as to whether the employer's proffered reasons are pretextual and (2) creates a reasonable inference that [the protected characteristic] was a determinative factor in the adverse employment decision," and noting that additional evidence may or may not be necessary to make the required showing to avoid summary judgment).

### 2. *Bauer's circumstantial evidence*

Metz Baking challenges Bauer's discrimination claim at each stage of the *McDonnell Douglas* analysis. Metz Baking asserts that Bauer cannot establish her *prima facie* case, because she cannot show that she was qualified for her position or performing it to her employer's reasonable expectations. Metz Baking also asserts that Bauer's consistent poor performance, which continued after warnings, provided a legitimate, non-discriminatory reason for terminating her. Finally, Metz Baking contends that Bauer has presented nothing sufficient to demonstrate that its legitimate reason is a pretext for Bauer's claim to survive summary judgment. Bauer asserts that her claim should survive summary judgment at each stage of the *McDonnell Douglas* analysis.

#### a. *Bauer's prima facie case*

The Eighth Circuit Court of Appeals recently explained what is required to establish a *prima facie* case of discrimination:

> The elements of a prima facie case are not inflexible and vary slightly with the specific facts of each case. *Hindman v. Transkrit Corp.*, 145 F.3d 986, 990–91 (8th Cir.1998). Ms. Breeding must demonstrate (1) that she is within the protected class; (2) that she was qualified to perform her job; (3) that she suffered an adverse employment action; and (4) that nonmembers of her class (persons

under 40 in the ADEA context or of the opposite gender in the Title VII sex discrimination context) were not treated the same. *See Kneibert v. Thomson Newspapers, Michigan Inc.*, 129 F.3d 444, 451 n. 4 (8th Cir.1997) (defining the prima facie case in the ADEA context); *Lyoch v. Anheuser–Busch Cos.*, 139 F.3d 612, 614 (8th Cir.1998) (defining the prima facie case in Title VII context).

*Breeding,* 164 F.3d at 1156. Although the court in *Breeding* stated the last element to be that others who were not members of the protected class were treated differently, the claimant's replacement need not be outside ADEA protection for an age discrimination claim to lie; the replacement need only be substantially or significantly "younger." *See O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) ("In the age-discrimination context, ... an inference [that an employment decision was based on an illegal discriminatory criterion] cannot be drawn from the replacement of one worker with another worker insignificantly younger. *Because the ADEA prohibits discrimination on the basis of age and not class membership*, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class.") (emphasis added); *Hopper v. Hallmark Cards, Inc.*, 87 F.3d 983, 988 n. 5 (8th Cir.1996) ("The phrasing of this fourth prong [stating the requirement to be that the plaintiff was replaced by a 'younger' worker] reflects the United States Supreme Court's recent modification. *See O'Connor v. Consolidated Coin Caterers Corp.*, [517] U.S. [308], [312, 116 S.Ct. 1307, 134 L.Ed.2d 433] (1996). Many courts had previously required a plaintiff to show replacement by a worker outside the protected class, *i.e.*, under the age of 40. Such a requirement is no longer permissible. As the *O'Connor* Court concluded, 'the fact that a replacement is substan-

tially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class.' *Id.*"); *see also Montgomery,* 169 F.3d at 556 (stating the fourth element as replacement by a "younger" person). The parties agree that the only fighting issue here, however, is the second element of Bauer's *prima facie* case, Bauer's qualification to perform her job, because they agree that Bauer is within the protected class under the ADEA; that she suffered an adverse employment action when she was terminated; and that she was replaced by a women who was considerably younger, and indeed, too young to qualify for ADEA protection.

Metz Baking asserts that Bauer simply was not qualified for her position, and was not performing it to Metz Baking's reasonable expectations, in light of the numerous disciplinary actions taken against her. Bauer asserts that she was performing her job "the same as always," although she admits to all of the specific errors stated in Kelly's various disciplinary notices in 1996 and 1997. The court reluctantly concludes that a jury question is just barely presented on the second element of Bauer's *prima facie* case in light of the fact that Bauer had a poor employment record, but that record had been tolerated until the spring of 1997. *Crawford,* 37 F.3d at 1341 ("Because discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant."). The court, however, admits the perversity of a long record of poor performance somehow working to an employee's benefit by undermining an employer's argument

that the employee was not performing to reasonable expectations at the time she was fired—*i.e.,* was not "qualified" for the job. Nonetheless, the jury question in these circumstances, as the court sees it, is whether Bauer's performance was suddenly bad enough, or had now worsened sufficiently, that she was no longer qualified for her position, or whether age was the only factor that now tipped the balance in favor of her termination.[1]

Although it is with considerable reluctance, the court concludes that Metz Baking is not entitled to summary judgment on the ground that Bauer cannot establish a *prima facie* case of age discrimination.

### b. Metz Baking's legitimate, non-discriminatory reason

If the plaintiff establishes a *prima facie* case of discrimination, "[t]he burden then shifts to the employer to demonstrate a legitimate, nondiscriminatory reason for the adverse employment action." *Breeding,* 164 F.3d at 1156 (citing *Fast,* 149 F.3d. at 890). The employer need only articulate, not prove, its legitimate reason, because the employee continues to bear the burden of proving that he or she was subjected to unlawful discrimination. *See Walton,* 167 F.3d at 427 ("At all times the burden of persuasion remains on the plaintiff."). Although the court is skeptical that Bauer has established a *prima facie* case of age discrimination, the court concludes that Metz Baking has certainly done enough to satisfy the second prong of the analysis by asserting that Bauer's poor job performance justified her termination. *See Simmons,* 174 F.3d at 916 ("Assuming that Simmons presented a *prima facie* case under *McDonnell Douglas,* Oce's presentation of comprehensive performance

---

1. Were the court the trier of fact, it would not hesitate to find that Bauer was not qualified for her job at the time she was fired, in light of her poor performance record, the specific and frequent notices of deficiencies to which Bauer admits but which she failed to cure, and her failure to comply with the Last Chance Agreement. However, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick,* 90 F.3d at 1376–77; *Johnson,* 906 F.2d at 1237. Only by the slimmest of margins has Bauer generated an issue of fact on her qualification for her job at the time she was fired.

ratings articulated a non-discriminatory reason for terminating Simmons.").

### c. Bauer's showing of pretext

If the employer articulates a legitimate, non-discriminatory reason for its action, "the plaintiff must then demonstrate that the employer's stated reason is pretextual and that the real reason for the employer's adverse employment action was unlawful age or sex discrimination." *Breeding*, 164 F.3d at 1157. Thus, as in *Simmons*, the court's assumption that the plaintiff has presented a *prima facie* case of discrimination, and its finding that the employer has articulated a legitimate, non-discriminatory reason for its action, "le[aves] us with the question whether [the plaintiff] presented sufficient evidence of pretext to survive summary judgment." *Simmons*, 174 F.3d at 916.

To overcome the employer's proffered legitimate reason, the employee must do more than assert that a jury might disbelieve the employer's proffered reason; the employee " 'must present affirmative evidence' " that discrimination is the reason for the adverse employment action. *See Walton*, 167 F.3d at 428 (quoting *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505). Although it is possible for a strong *prima facie* case to provide sufficient evidence on the factual issue of pretext, *see Rothmeier*, 85 F.3d at 1333–37, Bauer's *prima facie* case, as explained above, is at best very weak. Thus, she is required to come forward with something more than her *prima facie* case to establish pretext. Bauer returns to Kelly's comments as her primary evidence that her age, not her poor performance, was the reason for her termination.

 Just as "stray remarks" are not "direct evidence" of discrimination, "[s]tray remarks 'that are remote in time do not support a finding of pretext for intentional discrimination.' " *Simmons*, 174 F.3d at 916; *Walton*, 167 F.3d at 428; *Hutson*, 63 F.3d at 778–79. The court found above that Kelly's statements were, at best, "stray remarks" or comments un-

related to the decisional process, and thus cannot suffice as Bauer's additional showing to demonstrate pretext. *See Simmons*, 174 F.3d at 916 ("Given the comprehensive objective evidence presented by Oce of Simmons's poor job performance, the offensive remarks made by Curless outside of the decision making process, without more, are not enough to 'create a trialworthy issue' of pretext.").

In *Simmons*, the Eighth Circuit Court of Appeals considered other attempts by a discharged employee to demonstrate pretext that are similar to Bauer's:

> Simmons argues that Oce's non-discriminatory explanation for the termination—his low performance ratings—was pretextual because the performance ratings were partially subjective. He contends that a jury could find that Curless used the subjective component of the rating system to mask racial animosity towards him. In *Walton*, we held that evidence that the supervisor had made alleged discriminatory comments some two years prior to the termination was insufficient to support a finding of pretext. We stated that "the presence of subjectivity in employee evaluations is itself not a grounds for challenging those evaluations as discriminatory." *Walton*, 167 F.3d at 428 (quoting *Hutson*, 63 F.3d at 780). Because Simmons has presented no affirmative evidence that Curless manipulated Oce's facially neutral performance appraisal, the district court properly granted summary judgment on the issue of discriminatory treatment. *See Walton*, 167 F.3d at 428.

*Simmons*, 174 F.3d at 916. Similarly, here, Bauer's argument that Kelly used her subjective review of her work to drive her from her job for age-related reasons is insufficient standing alone, because the subjectivity of Kelly's reviews is not enough to establish pretext, particularly where Kelly's evaluation of Bauer's performance was concurred in by others and indeed often based on the complaints of others, and Bauer admits to the miscon-

duct identified in Kelly's disciplinary notices.

Even supposing Bauer had raised a genuine issue of material fact as to pretext, "a trial judge [is allowed] to decide on a motion for summary judgment that the evidence is insufficient for a reasonable trier of fact to infer discrimination even though the plaintiff may have created a factual dispute as to the issue of pretext." *Rothmeier,* 85 F.3d at 1335. In *Simmons,* the court observed,

> [B]ecause Simmons has presented no affirmative evidence that his termination was for other than performance-based reasons, the grant of summary judgment as to his claim of retaliatory discharge was also proper. *See Herrero v. St. Louis Univ. Hosp.,* 109 F.3d 481, 485 (8th Cir.1997).

*Simmons,* 174 F.3d at 917; *accord Kerns,* 178 F.3d at 1018 ("Kerns has not shown reason to doubt that Castiglioni's disapproval of her work performance motivated the disciplinary steps he took," and there was no other evidence of pretext). Here, Bauer has presented no affirmative evidence that her termination was for other than performance-based reasons or that something other than poor performance motivated any of the disciplinary steps Kelly took.

Thus, "[a]lthough summary judgment should be used sparingly in the context of employment discrimination cases," Bauer's evidence does not "go beyond the establishment of a prima facie case to support a reasonable inference regarding the alleged illicit reason for the defendant's action." *Landon,* 72 F.3d at 624. Summary judgment is therefore appropriate on Bauer's claim on the ground that she cannot satisfy the third stage of the *McDonnell Douglas* burden-shifting analysis.

### III. CONCLUSION

There is no "direct evidence" here of age discrimination, because Bauer failed to generate a genuine issue of material fact that Kelly's comments demonstrated a discriminatory animus or that, even if they did display such an animus, that there was any causal connection between the comments and the adverse employment decision. Furthermore, Bauer's age discrimination claim also fails on the circumstantial evidence presented. Although the court concludes that there is just barely a genuine issue of material fact that Bauer was qualified for her job, and thus could establish a *prima facie* case of age discrimination, Metz Baking has articulated a legitimate, non-discriminatory reason for its decision to terminate Bauer—her continued poor performance—and Bauer has failed to come forward with sufficient evidence that Metz Baking's reason is pretextual to survive summary judgment.

In these circumstances, Metz Baking's April 30, 1999, motion for summary judgment is **granted,** and this matter is **dismissed.**

**IT IS SO ORDERED.**