# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3109

_____

Jeffrey Loeb,        *
               *
    Appellant,      *
               * Appeal from the United States
   v.           * District Court for the
               * District of Minnesota.
Best Buy Co., Inc.,     *
               *
    Appellee.      *

_____

Submitted: May 14, 2008
Filed: August 8, 2008

_____

Before WOLLMAN, MURPHY, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Jeffrey Loeb, a former Best Buy employee, brought this employment discrimination suit against Best Buy, asserting that Best Buy terminated his employment because of his age. Best Buy filed a motion for summary judgment, which the district court[1] granted. Loeb appeals, arguing that he presented sufficient evidence to support his age discrimination claim. We affirm.

_____

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

I. *Background*

Best Buy hired Loeb, then 44 years old, as an information services program manager in February 2000. At that time, Best Buy's retail operations model focused on selling to specific customer group profiles—termed "customer centricity." One customer centricity group focused on "Barry," named after a fictitious high-end customer. Julie Gilbert led the Barry team along with Dean Kimberly.

In mid-2003, Gilbert and Kimberly, and others, met to conceive products and services for Barry customers. The Barry team's initial focus would be the creation of a high-end store-within-a-store, called the Magnolia Home Theater ("MHT"). The MHT would feature high-end home theater products and highly trained sales people. The Barry team planned to open two prototypes of the MHT by May 2004. If successful, the MHT would be replicated on a larger scale. The first MHT stores were to serve as laboratories where the Barry team could refine better methods for inserting MHTs into existing Best Buy stores. Other Best Buy workgroups—such as real estate, design, construction, merchandising, inventory, and sales—coordinated with the Barry team to implement these first MHTs.

In late December 2003 or early January 2004, Loeb worked on a different customer centricity team. Intrigued by the project, Loeb asked Gilbert if he could help on the Barry team, and although no opening existed on the Barry team, Gilbert and Kimberly agreed to involve Loeb in the Barry team's work. Loeb was assigned the task of coordinating the different groups that needed to work together in order to get the MHT lab stores completed. In April 2004, Loeb, then 48 years old, was officially moved to the Barry team and began reporting directly to Kimberly and Gilbert. Neither Gilbert nor Kimberly knew Loeb's age at the time.

After he began working on the Barry team, Loeb asked that his role be formalized and that he be given a title and job description. He drafted a document describing his role and responsibilities on the Barry team. The document described his

role to include business planning and execution of the MHT lab stores; management of "the process to transition successful value propositions out of the test stores into Barry stores"; heading "a multi-function working group to integrate new technologies into seamless Value Propositions for Barry"; and carrying out other assigned ad hoc duties. Loeb gave this draft document to Gilbert, and Gilbert found the document to generally describe "his role as the person coordinating the work of the various groups that we needed to put together the MHT store-within-a-store concept." Gilbert does not remember specifically discussing Loeb's job title, and Loeb's written draft is the only document that describes his role on the Barry team. Gilbert testified that she did not view Loeb as on loan from the information services department and did not believe that his transfer to the Barry team was temporary.

Loeb, the oldest member of the Barry team, successfully performed his team duties. The culture of the Barry team was very team-oriented and included "Barry huddles" each morning where everyone on the team would get an update and do a cheer of the day. Loeb testified that the Barry team management focused on partnering people, lacked hierarchy, and relied on a very feelings-based management style, which he described as "new age." Everyone on the Barry team, regardless of age, was required to participate in these activities.

In mid-May 2004, the first two MHT stores were opened, and because of their success, two more were opened in August 2004. At that time, Best Buy concluded the first phase of the MHT project and decided to roll out MHT stores on a larger scale. Because Best Buy had a successful model for the MHT, the Barry team shifted its focus to nationwide deployment of the MHT—they called this "scale-up mode." Also in May 2004, Loeb was told there would no longer be a place for him on the Barry team due to the shift in the nature of the group's work. Gilbert and Kimberly felt Loeb was not interested in the routine nuts and bolts job of scaling-up the MHTs and believed Loeb would not be happy working on that phase of the project. Kimberly told Loeb that because his work on the MHT lab stores was coming to an end, Loeb should

begin looking for work elsewhere within Best Buy or outside of Best Buy. Kimberly and Gilbert made the decision regarding Loeb's role on the Barry team, and they agreed to talk to the human resources department to ensure Loeb had sufficient time to transfer within Best Buy.

Loeb was surprised to hear that there would not be work for him because customer centricity was at the center of everything Best Buy was doing, and he knew that Best Buy planned to maintain approximately 18 prototype stores and open over 200 Barry stores over a two-year period. There was also a three-year strategy to develop more "value propositions" such as dedicated checkout areas and dedicated phone lines just for Barry customers.

On September 23, 2004, Best Buy advised Loeb by letter to find another position within Best Buy or he would be terminated after 60 days. The letter based the "get reassigned or get terminated notice" on corporate cost cutting at the location where Loeb worked. This letter was signed by Randy Ross, Vice President of Human Resources.

On November 23, 2004, Loeb's last day of employment at Best Buy, he received a letter from Karen Dekker, Director of Human Resources stating that "Best Buy, in an effort to become more efficient and customer-centric has made numerous changes to streamline processes and eliminate redundant tasks . . . . [Loeb's] position was eliminated effective 11/23/2004 as part of our reorganization efforts."

In Spring 2005, Loeb filed a claim with the Equal Employment Opportunity Commission (EEOC), alleging age discrimination. A March 8, 2005, letter from Jane Kirshbaum, Best Buy's Senior Counsel, to the EEOC stated that Loeb's employment was terminated as a result of a staff reduction. In a "Staffing Analysis" worksheet completed by Gilbert on September 9, 2004, Gilbert wrote that:

-4-

Jeff was asked to act in a project manager role on the Barry team to coordinate the launch of the first four Magnolia Home Theater stores in California. This work started in January, and was effectively completed by mid-September. At this point, the leadership of the Barry team has determined that Jeff's current role is no longer needed on the team, since MHT is now in a scale-up mode (as opposed to launch mode). In the time Jeff has worked with the Barry team, his previous role was eliminated when his department's (IS) services were outsourced to Accenture.

Loeb and Gilbert made contacts within Best Buy, but Loeb did not find another position within Best Buy. He was terminated on November 23, 2004.

Subsequently, in April 2005, Loeb brought suit against Best Buy, asserting a claim of age discrimination under both the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634, and the Minnesota Human Rights Act (MHRA), Minn. Stat. § 363A.08. In August 2007, the district court granted Best Buy's motion for summary judgment, finding that Loeb failed to state a prima facie case and failed to show Best Buy's reasons for his termination were pretext for age discrimination. Loeb now appeals.

## II. *Discussion*

Loeb argues on appeal that the district court erred in granting summary judgment to Best Buy. We review de novo the district court's grant of summary judgment. *Carraher v. Target Corp.*, 503 F.3d 714, 716 (8th Cir. 2007). "Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. We must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party." *Id.* (internal citations omitted). In deciding whether an issue of material fact exists that would prevent the entry of summary judgment, "we are mindful that we do not sit as a super-personnel department to review the wisdom or fairness" of Best Buy's decision to terminate Loeb. *Wittenburg v. Am. Express Fin.*

*Advisors, Inc.*, 464 F.3d 831, 836 (8th Cir. 2006) (internal citation and quotations omitted).

Under the ADEA, "[i]t shall be unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Under the MHRA "[e]xcept when based on a bona fide occupational qualification, it is an unfair employment practice for an employer, because of . . . age to . . . discharge an employee." Minn. Stat. § 363A.08 Subd. 2(2).

"To establish a claim of intentional age discrimination, a plaintiff may present direct evidence of such discrimination or may prove his claim through circumstantial evidence." *Carraher,* 503 F.3d at 716. Where, as here, the plaintiff presents only circumstantial evidence of discrimination, we apply the familiar burden-shifting analysis of *McDonnell Douglas Corp. v. Green.* 411 U.S. 792, 802 (1973). *Id.*

This analysis requires that, first, the plaintiff establish a prima facie case of discrimination. *Id.* at 717. To establish a prima facie case, Loeb must show that (1) at the time he was fired he was over 40 (a member of the class protected by the ADEA ("individuals who are at least 40 years of age," 29 U.S.C. § 631(a)); (2) he was otherwise qualified for the position that he had; (3) he was discharged by Best Buy; and (4) Best Buy subsequently hired a younger person to fill his position. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). Here, we assume without deciding that Loeb established a prima facie case of age discrimination. *See Wittenburg*, 464 F.3d at 836 (assuming without deciding that plaintiff in ADEA case met prima facie case).

Assuming Loeb made a prima facie case, Best Buy is required to proffer a legitimate, nondiscriminatory reason under the *McDonnell Douglas* test for Loeb's

termination. *Id*. Best Buy avers that it terminated Loeb, after giving him time to find another position within Best Buy, because the Barry team's work was shifting to different functions. Further, Gilbert and Kimberly did not believe Loeb would be interested in working on the scale-up phase of the project. The district court found that this was a legitimate, nondiscriminatory reason for terminating Loeb, and we agree.

The burden next shifts to Loeb to establish that this nondiscriminatory reason for his termination was pretextual and that age played a role in his termination. *Id*. "That is, the plaintiff may attempt to establish that he was the victim of intentional discrimination by showing that the employer's proffered explanation is unworthy of credence." *Reeves,* 530 U.S. at 143 (internal quotations and citation omitted). "At this stage, [Loeb] can avoid summary judgment only if the evidence considered in its entirety (1) created a fact issue as to whether [Best Buy's] proffered reasons are pretextual and (2) created a reasonable inference that age was a determinative factor in the adverse employment decision." *Lewis v. St. Cloud State Univ.*, 467 F.3d 1133, 1137 (8th Cir. 2006) (internal quotations and citation omitted).

Loeb argues that he has established pretext because: Best Buy's stated reasons for his termination were false and inconsistent; Kimberly and Gilbert had age-based animus from the outset; and Best Buy chose a less experienced employee to replace him.

First, Loeb argues that the six reasons given for Loeb's termination are inconsistent and false and, therefore, show pretext. Pretext may be shown with evidence that the employer's reason for the termination has changed substantially over time. *Morris v. City of Chillicothe*, 512 F.3d 1013, 1019 (8th Cir. 2008). The falsity of a nondiscriminatory basis for the employment action may also support a finding of pretext—"[I]f the proffered reason is shown by conflicting evidence to be untrue, then the nonmoving party is entitled to all favorable inferences that the false reason given

masks the real reason of intentional discrimination." *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1107 (8th Cir. 2000). Loeb describes the six statements as follows:

(1) It terminated Loeb's employment "to reduce the labor costs" and "to reduce [its] headcount." (termination letter from Randy Ross, Vice President of Human Resources);

(2) It terminated Loeb as part of a reorganization intended "to streamline processes and eliminate redundant tasks." (notice from Karen Dekker, Director of Human Resources);

(3) It terminated Loeb as part of a "staff reduction" (letter from Senior Counsel Jane Kirshbaum to EEOC);

(4) It terminated Loeb because his role ended as the result of the Magnolia stores switching to scale-up mode;

(5) It terminated Loeb because he agreed to be terminated based on his lack of interest in scale-up work; and

(6) Loeb was not qualified to perform the strategic work going forward.

Loeb is correct that the record indicates that he was not terminated to reduce labor costs, to reduce headcount, or to streamline processes. Instead, the record shows that those responsible for his termination, Gilbert and Kimberly, terminated his position on the Barry team because they believed that he would not enjoy and was not well-suited for the next phase of the MHT project.

As to statements one and two, those letters were signed by Ross and Dekker, two people who were not the relevant decision-makers who terminated Loeb. "As we have previously stated, a plaintiff must establish some causal relationship to show the significance of . . . statements made by persons other than the relevant decision-maker to the resolution of the ultimate issue of intentional discrimination." *See Carraher,* 503 F.3d at 718 (internal quotations and citation omitted). Loeb has not shown such a connection. Loeb admits that Gilbert and Kimberly decided to terminate him, not Ross and Dekker. The record does not contain any evidence showing a causal relationship between the statements by Ross and Dekker and Best Buy's alleged

animus for Loeb's age. The record indicates that only Gilbert and Kimberly made the decision to remove Loeb from the Barry team and, therefore, we agree with the district court that we need not consider statements one and two.

The letter to the EEOC, statement three, does state that Loeb was terminated "as a result of a staff reduction." However, we agree with the district court's analysis that, taken in context, this letter to the EEOC is consistent with the stated nondiscriminatory basis for Loeb's termination. The letter to the EEOC also states that Gilbert and Kimberly made the decision to eliminate Loeb's position and that "responsive information [would] follow under separate cover." The "responsive information" was contained in a letter sent that same day by the same person, Kirshbaum, and the letter explained that the MHT project was moving from launch mode to scale-up mode and that the work that had been done by Loeb was no longer needed. The letter also explained that because Best Buy had eliminated much of its information services department as a result of outsourcing to Accenture, Loeb could not return to his former position because it had been eliminated. Reading the two letters together, Best Buy's explanation was consistent with the stated nondiscriminatory reason. Loeb argues that there was no "staff reduction" on the Barry team, but reading the entire document, we agree with the district court that the "staff reduction" being discussed is the elimination of Loeb's position. The EEOC letter does not show a change in Best Buy's explanation of Loeb's termination.

As to statements four and five ("it terminated Loeb because his role ended as the result of the Magnolia stores switching to scale-up mode" and "it terminated Loeb because he agreed to be terminated based on his lack of interest in scale-up work"), we agree with the district court that these statements also do not show pretext. First, statement four is not a shift, it is consistent with Best Buy's legitimate nondiscriminatory reason, and the record does not support an assertion that the statement is false. The record indicates that the majority of the work coordinating the MHT scale-up was not done on the Barry team even though the leaders of the Barry

team were still responsible for the project in general. Second, as to statement five, Best Buy never represented that Loeb agreed to be terminated, just that they believed he would not enjoy the scale-up work—that statement is unsupported.

As for statement six, that Loeb was not qualified to perform the strategic work going forward, we find that reason is not inconsistent with Best Buy's stated reason—it is not a change in their justification for the termination but rather an elaboration. *See Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 855 (8th Cir. 2005) ("While it is true that [s]ubstantial changes over time in the employer's proffered reason for its employment decision support a finding of pretext this does not mean that an employer cannot elaborate on its proffered reason.") (citations and quotations omitted). Gilbert testified that the kind of strategic work that Loeb had done while on the Barry team was no longer available.

We conclude that the actual decision-makers who terminated Loeb did not give inconsistent reasons, and therefore, Loeb has not shown pretext on the basis of conflicting justifications for the employment action.

Second, Loeb argues that Kimberly and Gilbert had age-based animus from the outset. Loeb testified that during his employment on the Barry team, Gilbert asked him how old he was, and when he told her, she was surprised because he looked and acted younger. This is the only age-related comment made by Gilbert about Loeb's age. Loeb has not alleged any statement by Kimberly indicative of age bias.

Loeb claims that he was brought onto the Barry team and that his bosses planned to free up his position for a younger replacement. He claims Kimberly could have moved headcount off the Barry team so that maybe another department could have hired Loeb. Loeb contends the "youth-based culture" of Best Buy (Barry huddles, etc.) support his contention that Kimberly and Gilbert wanted to create a position so they could later fill it with a young person.

-10-

Loeb's argument fails for want of proof. We agree with the district court's finding that Loeb has not presented evidence, besides pointing to very general job descriptions, to contradict Best Buy's proof that the individuals, D.M.[2] and P.M., hired after Loeb's termination filled entirely different positions. Kimberly and Gilbert could not have created Loeb's position just so that they could later fill it with a younger person—Loeb's position was eliminated. Also, the record contains no evidence to support the allegation that Loeb was brought in just to increase the headcount on the Barry team. In fact, the undisputed evidence shows that Loeb first approached Gilbert asking to join the Barry team.

---

[2]In the fall of 2004, while Loeb was still looking for a job before he was officially terminated, Gilbert sought to add a position called "Segment Team Member; Ideation/Innovation." This position would take over some of Kimberly's responsibilities and would invent new ideas for products and services for Barry customers. The position was posted inside and outside Best Buy in early 2005, and Loeb did not apply for this job. Even if he had, Kimberly and Gilbert stated that the person in this new role would not be doing the kind of work Loeb had done and that Loeb was not specifically qualified for this role. In March 2005, D.M. was hired for this position—she had been with Best Buy for 17 years, and she was 41 years old. She took over Kimberly's duties as he moved to another position. D.M. runs the Barry prototype stores, and her work is "strategic"—the Barry prototypes continued to operate even after the scale-up of MHT because Best Buy used them to come up with new ideas.

Lastly, Loeb argues that the hiring of P.M.[3] as his replacement shows pretext because P.M. was less qualified. Pretext may be proven by evidence showing a younger, less-qualified, weaker-performing employee replaced an older employee. *Hase v. Mo. Div. of Employment Sec.*, 972 F.2d 893, 897 (8th Cir. 1992) (finding younger individual who had sixteen years less experience and lower performance rating was promoted over plaintiff could lead a reasonable trier of fact to infer that defendant's proffered reasons were pretextual). Loeb argues that P.M. replaced him and is a less-qualified employee and a liability to Best Buy. First, as stated above, we agree with the district court's finding that the record does not include evidence contradicting Best Buy's contention that P.M.'s work is different from the work Loeb did on the Barry team. Further, unlike in *Hase*, the record does not include relevant information that would lead a reasonable juror to conclude that P.M. was less qualified than Loeb or that there remain material factual issues whether P.M. was a liability to Best Buy. *Id.*

---

[3]In about July 2005, Best Buy created the "Director, Innovation–Barry Segment" position, and this position was never posted. Instead, P.M. was assigned the position; he had been with Best Buy for 18 years and held many positions in the field of retail operations. He was 41 at the time he was hired and had one disciplinary item and one poor performance in his personnel file. The Barry team had continued to develop ideas for an MHT store that would be built to look like a house and feature products and show how they could be incorporated into the home. The new position related to this new idea, and the duties included working on innovating for sales and sale development aspects of the MHT home store. Gilbert testified that even if Loeb had applied for this position, he would not have been considered because he lacked the "field level" retail experience necessary. The stand-alone MHT home store prototype was complete in January 2006, and P.M. had a retail focused operations role wherein he was required to create incentive plans designed to forward Barry customers from regular Best Buy stores to the stand-alone home stores.

In sum, Loeb has not established that Best Buy's stated reasons for his termination were pretext for age discrimination nor shown that issues of material fact remain for resolution by trial.[4]

III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____

---

[4]Because the same analysis applies to MHRA claims as ADEA claims, Loeb's MHRA age discrimination claim also fails. *Wittenburg*, 464 F.3d at 841 n.15.