**Rickey QUAYLE, Plaintiff,**

v.

**COMMUNITY HEALTH CENTERS OF SOUTHERN IOWA, INC., Defendant.**

No. 4:14–cv–00043–JEG

United States District Court, S.D. Iowa, Central Division.

Signed May 21, 2015

Thomas W. Foley, Katie A. Ervin Carlson, Margret Elizabeth White, Babich Goldman, P.C., Des Moines, IA, Kodi A. Brotherson, Becker and Brotherson, Sac City, IA, for Plaintiff.

George E. Martin, III, Heidi A. Guttau-Fox, Kenneth W. Hartman, Baird Holm LLP, Omaha, NE, for Defendant.

## ORDER

JAMES E. GRITZNER, Senior Judge, U.S. DISTRICT COURT

This matter comes before the Court on Motion for Summary Judgment, ECF No. 18, by Community Health Centers of Southern Iowa (Defendant or CHCSI). Rickey Quayle (Plaintiff) resists. The Court held a hearing on the Motion on April 30, 2015. The Motion is fully submitted and ready for disposition.

## I. BACKGROUND

Plaintiff alleges Defendant discriminated against him because of his age and sex in violation of the Age Discrimination and Employment Act (ADEA), 29 U.S.C. §§ 621–34, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Iowa Civil Rights Act (ICRA), Iowa Code Ch. 216.

Defendant is a health care center that operates in southern Iowa. From 2008 until May 2012, Plaintiff worked as a lab/x-ray technician at Defendant's facility in Leon, Iowa. Prior to working at CHCSI, and beginning in 1969, Plaintiff worked for Decatur Medical Services (DMS). In 2008, DMS closed, and many of DMS's former employees, including Plaintiff, began working for Defendant. Plaintiff testified in his deposition that he received a new supervisor at that time, but his day-to-day activities did not change.

Between 2008 and 2011, Gloria Redman and Janeen Boswell served as Plaintiff's supervisors. Jodi Wharff, the clinical director, became Plaintiff's supervisor in July 2011 and was his supervisor until his termination.

Throughout the course of his employment with Defendant, Plaintiff received discipline and instructions to modify his practices. On December 1, 2010, Redman issued Plaintiff a "reeducation form"[1] instructing him not to use white-out on patients' charts. On August 3, 2011, Wharff told Plaintiff he had been improperly disposing of sharps by not placing them in a container secured to the wall.

On August 10, 2011, Wharff issued Plaintiff a "level three"[2] disciplinary form for using expired controls, handling specimens without wearing gloves, using ex-

---

1. Samantha Cannon, Defendant's CEO as of October 2014, testified in her deposition that Defendant does not consider reeducation forms as discipline, but issues them to an employee when a matter needs correction but does not warrant discipline or the employee may not have received adequate information about the subject.

2. Defendant's Employee Conduct and Work Rules outlines what it terms a "progressive discipline" structure in which "offenses are

pired lab supplies, and improperly disposing of sharps. Plaintiff testified in his deposition that he took this written discipline very seriously, and he did not fail to wear gloves after receiving the reprimand. Plaintiff also asserted that he had not used disposable or one-patient supplies on multiple patients.

Wharff provided Plaintiff an employee evaluation on October 19, 2011. This was the first formal evaluation Plaintiff received as an employee of Defendant. Wharff ranked Plaintiff as "superior" or "good" in the job knowledge, quality, reliability, availability, independence, and judgment categories. However, she indicated that Plaintiff needed improvement in the productivity, creativity, initiative, adherence to policy, and interpersonal relationships categories. Based on this evaluation, Plaintiff received a two-percent raise. The evaluation form indicated that if he had received higher rankings, Plaintiff could have received up to a three percent raise.

Also on October 19, 2011, Wharff gave Plaintiff a disciplinary warning asserting that he continued to use expired controls and failed to follow proper glove procedure. Plaintiff asserts that he did not fail to wear gloves after he received initial counseling about the issue and he did not use expired controls.

Defendant further asserts that in December 2011, Wharff observed Plaintiff improperly disposing of sharps. Plaintiff responds that he "did not put items in an uncovered trash can that belonged in the sharps container." Decl. Rickey Quayle ¶ 6, Pl.App. 16. Plaintiff asserts that Wharff did not give him any instruction on proper sharps disposal in December 2011.

Wharff testified in her deposition that she heard reports from others and personally observed Plaintiff either not wearing gloves or not changing them appropriately in January 2012. Doug Jaeger, Defendant's CEO at the time of Plaintiff's termination, also testified that he had "[p]robably over a half a dozen" conversations with Plaintiff about Plaintiff's failure to follow OSHA guidelines. Like Wharff, Jaeger testified he personally observed Plaintiff failing to comply with OSHA requirements by not wearing gloves when drawing blood, eating in the lab area, and not properly disposing of sharps.

Jaeger further testified that he asked Dr. Richard, a physician and Defendant's lab director at the time, to deliver Plaintiff several reeducation forms in January 2012. Jaeger testified he did this because Dr. Richard was Plaintiff's supervisor at DMS and Jaeger thought Plaintiff might listen to him. Jaeger testified that Dr. Richard encouraged Jaeger not to terminate Plaintiff because Plaintiff was highly educated in his field and well-respected.

Dr. Richard delivered Plaintiff a reeducation form regarding proper glove procedure on January 10, 2012. The same day, Dr. Richard gave Plaintiff reeducation forms regarding leaving the x-ray room door open while patients were in the room and eating and drinking in the lab room. Plaintiff signed both forms, and both forms warned that further infractions could lead to suspension or termination. Plaintiff testified that Dr. Richard told him not to worry about the forms and "[j]ust go ahead and sign everything." Def. Ex. 15, Def.App. 72–73.[3]

categorized as Level 1, Level 2, or Level 3." Def. Ex. 8, Def.App. 14. The policy continues that Level 3 violations "are considered severe and may result in suspension pending the investigation of an alleged violation. Sub-

stantiated violations may result in discharge for the first occurrence." *Id.*

3. Dr. Richard recalled that he had around three face-to-face meetings with Plaintiff to discuss OSHA policies. Dr. Richard testified

Another level three disciplinary form dated April 24, 2012, appears in Plaintiff's personnel file. This form provides that Plaintiff failed to take x-rays that complied with the requests of Iowa Radiology. Jodi Wharff testified that Iowa Radiology called Plaintiff and asked him to complete certain x-rays, but he did not. Wharff also asserted that Plaintiff failed to complete the correct number of x-rays indicated by various codes contained in doctors' orders. The disciplinary form indicates that Plaintiff was not asked to sign it. Plaintiff testified he did not receive a copy of this form and no one discussed it with him.

In late April 2012, an elderly female patient came to Defendant's Leon clinic, and a doctor entered an order for the patient to have several tests. The tests were not conducted on the same day as the patient's appointment, and she arranged to return on May 1, 2012, at 9:00 a.m. Amber Swartz, a lab technician, testified that she put a copy of a "Superbill" for this patient in a "pile of superbills of upcoming labs that [the lab technicians] were supposed to be doing." Def. Ex. 34, Def.App. 225, 48:1–7. A Superbill contains a doctor's orders to draw certain specimens and conduct specific labs.

On May 1, 2012, the patient returned before Swartz's shift began. Plaintiff drew blood from the patient. Plaintiff asserts that, although the doctor ordered three test, only orders for two of these tests appeared on the patient's chart.

Plaintiff also states that a nurse told him the patient needed the two tests on the chart, but the nurse did not mention the other test.[4] On the day the patient returned, someone created a new Superbill for her that only called for two blood tests. When Swartz began her shift later in the day, she asked Plaintiff if he saw the Superbill she put in the pile. Plaintiff replied that he had not seen it. Plaintiff asserted in his deposition that he "didn't know anything about [the] pile." Pl.App. 7, 93:1–4.

After Swartz determined Plaintiff had not seen the Superbill, Swartz and Plaintiff realized the patient would have to return and have additional blood drawn. Plaintiff then threw the Superbill that had been in the pile into a trash can.

Swartz's written description of this event and her testimony assert she retrieved the Superbill from the trash and reported to Wharff that Plaintiff had thrown it away. Plaintiff asserts that after Swartz told him she would take care of scheduling the patient to return for additional testing, he simply threw away the Superbill and continued with his other work.

Plaintiff acknowledges it violates Defendant's policies to throw documents containing patient health information in a trash can. However, Plaintiff testified that Defendant's document destruction policy "was a policy that they came up with, and everybody was kind of getting used to it, [but

---

that he does not "choose to supervise by discipline." Def. Ex. 21, Def.App. 156, 15:12–17. Rather, Dr. Richard preferred to say, "These things are OSHA things. We didn't do them at the other office. We both do things we didn't do over there. Because I'm not the boss and this is a federal institution, we have to buckle in and do them." *Id.*

**4.** Swartz testified that Plaintiff only completed one test and there were two that he did not complete. Plaintiff's response to the "Complainant Questions" on his Iowa Civil Rights

Commission Complaint form is more consistent with Swartz's testimony than the assertions in his affidavit. In his complaint, Plaintiff reported that on May 1, 2012, a nurse ordered a lipid panel for the patient, and when they reviewed the original Superbill, Plaintiff and Swartz discovered she needed two additional tests, one of which would require the patient to return for another blood draw. Regardless of how many tests Plaintiff conducted originally, it is undisputed that the patient would have to return for an additional test.

throwing away documents containing personal health information] did happen." Def. Ex. 15, Def.App. 107. Plaintiff further asserts that he realized his mistake in throwing away the Superbill and he returned a few minutes later to retrieve it from the trash. Plaintiff explains he asked Swartz about the Superbill, and she said she shredded it.

Jaeger had final authority to decide whether to terminate Plaintiff. Jaeger presented Plaintiff with a termination letter dated May 7, 2012.[5] The brief letter explains that the "primary reason" for Plaintiff's termination was his "willful destruction of medical/patient information (doctor's order for laboratory tests)." Def. Ex. 30, Def.App. 200. Jaeger testified that Plaintiff's "lack of ability to handle the confidentiality of patient privacy on top of all the previous violations were enough to say 'enough is enough.'" Def. Ex. 29, Def.App. 194, 34:19–22.

After Plaintiff's termination, Swartz assumed Plaintiff's duties.[6] At the time, Swartz was thirty-four years old. Defendant also directed a part-time lab technician to help Swartz.

Plaintiff alleges other employees received more favorable treatment than he did. According to the affidavit of Jamie Miller, a nurse formerly employed by Defendant, a doctor at Defendant's clinic threw away a Superbill because he did not want a patient to be billed. Miller asserts that she told Wharff about the incident, but the "doctor's behavior continued."

Miller Decl. ¶ 6, Pl.App. 20. Plaintiff contends that Swartz also threw away Superbills, but he did not report her conduct to anyone.

Plaintiff further observes that Swartz also received reeducation forms for having food and drink in the lab and leaving the door ajar while patients were in the x-ray room. However, Swartz did not receive written discipline and was not terminated.

## II. DISCUSSION

The Eighth Circuit has repeatedly laid out the following standard for courts to apply in considering a motion for summary judgment in an employment discrimination case:

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. The movant bears the initial responsibility of informing the district court of the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those

---

**5.** Plaintiff asserts that Jaeger decided to terminate him before meeting with him on May 7, 2012. Jaeger testified that Samantha Cannon prepared the termination letter that Jaeger signed before Jaeger met with Plaintiff. However, Jaeger testified he made the final decision to terminate Plaintiff after giving him an opportunity to present his side of the story. Plaintiff testified that, although Jaeger did most of the talking, he told Jaeger that he had thrown away the Superbill but promptly re-

turned to retrieve, it at which time Swartz told him she had shredded it.

**6.** Defendant hired Swartz in early 2011 to work in the lab part-time. Swartz testified she had venipuncture and x-ray tech experience before she started working for Defendant. However, she had not worked as a lab technician and she did not have a lab technician certificate.

facts. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial. *Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.* *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir.2011) (en banc) (citations and quotations omitted).

## A. Age Discrimination Claim [7]

█ "The ADEA prohibits discrimination against employees, age 40 and over, because of their age." *Rahlf v. Mo–Tech Corp.*, 642 F.3d 633, 636 (8th Cir.2011) (citing 29 U.S.C. §§ 623(a)(1), 631(a)). "[W]hen a plaintiff 'has no direct evidence of [age] discrimination, his claims are analyzed under the familiar burden-shifting scheme of *McDonnell Douglas Corp.*'" *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 855 (8th Cir.2012) (alteration in original) (quoting *Haigh v. Gelita USA, Inc.*, 632 F.3d 464, 468 (8th Cir.2011)).

█ Here, the parties agree the familiar three-step *McDonnell Douglas* approach applies. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under the *McDonnell Douglas* framework, the plaintiff must first establish a prima facie case. *Gibson*, 670 F.3d at 856. Specifically, he "must show he (1) was at least forty years old, (2) suffered an adverse employment action, (3) was meeting his employer's legitimate expectations at the time of the adverse employment action, and (4) was

replaced by someone substantially younger." *Id.* (quoting *Morgan v. A.G. Edwards & Sons, Inc.*, 486 F.3d 1034, 1039 (8th Cir.2007)). If the plaintiff meets this showing, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for its action. *Id.* If the employer does so, the burden shifts back to the plaintiff to show that the employer's proffered reason is merely a pretext. *Id.*

Finally, the U.S. Supreme Court has held that the ADEA requires a plaintiff "to establish that age was the 'but-for' cause of the employer's adverse action." *Gross v. FBL Fin. Servs. Inc.*, 557 U.S. 167, 177, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009). "Normally, [courts] apply the same analysis to age discrimination claims under the ADEA and the ICRA." *Tusing v. Des Moines Indep. Cmty. Sch. Dist.*, 639 F.3d 507, 514 (8th Cir.2011). However, the Iowa Supreme Court has interpreted the ICRA "as requiring the plaintiff to prove only that age was a 'motivating factor' in— and not necessarily 'the only reason' for— the employer's decision." *Id.* (quoting *De-Boom v. Raining Rose, Inc.*, 772 N.W.2d 1, 12–13 (Iowa 2009)). Accordingly, even if summary judgment is appropriate on the ADEA claim, the Court must also evaluate whether Defendant is entitled to summary judgment on Plaintiff's less onerous ICRA claim.

The third element is the only prong of the prima face case in dispute. Defendant contends that Plaintiff was not meeting its legitimate expectations. The Eighth Circuit has repeatedly noted "there appears to be a tension in our circuit's jurisprudence regarding whether a court may consider an employer's reasons for discharging an employee when considering the qualified element of the prima facie case."

---

7. Both parties largely incorporate their arguments regarding the sex discrimination claim into their arguments addressing the age discrimination claim and visa versa. The Court will consider the parties' arguments as relevant to both claims.

*See Elam v. Regions Fin. Corp.*, 601 F.3d 873, 880 n. 4 (8th Cir.2010) (contrasting *Zhuang v. Datacard Corp.*, 414 F.3d 849, 854 (8th Cir.2005), with *Lake v. Yellow Transp. Inc.*, 596 F.3d 871, 874 (8th Cir. 2010)); *see also Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 521 (8th Cir.2010) (noting this tension, but declining to address it in that case as the plaintiff's "claim fails on pretext"). In some cases, the Circuit has cautioned that "[u]nder the qualification prong, a 'plaintiff must show only that he possesses the basic skills necessary for performance of the job,' not that he was doing it satisfactorily.'" *McGinnis v. Union Pac. R.R.*, 496 F.3d 868, 874 n. 2 (8th Cir.2007) (quoting *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 92 (2d Cir.2001)). In *Lake*, the Eighth Circuit reasoned,

> [The employee] is not required to disprove [the employer's] reason for firing him at this stage of the analysis.... If he were, the *McDonnell Douglas* burden-shifting analysis would collapse into the second element of the prima facie case.... [The plaintiff] establishes his prima facie case if, setting aside [the employer's] reason for firing him, he was *otherwise* meeting expectations or *otherwise* qualified (citations omitted).

*Lake*, 596 F.3d at 874 (citations omitted).

Here, Plaintiff worked as a lab technician from 1969 until his termination. According to Jaeger, Plaintiff's long-time supervisor, Dr. Richard, believed Plaintiff was a good employee and was respected in his field. In these circumstances, the Court finds Plaintiff was qualified for his position and was meeting the basic expectations for his position as sufficient to make out a prima facie case.

Moreover, here, Defendant has offered a legitimate reason for terminating Plaintiff. *See Torgerson*, 643 F.3d at 1047 ("The burden to articulate a nondiscriminatory justification is not onerous, and the expla-

nation need not be demonstrated by a preponderance of the evidence." (citation omitted)). As noted, Plaintiff's termination letter provides the primary reason for Plain-tiff's termination was his destruction of the Superbill. In addition, Jaeger testified the Superbill incident, along with Plaintiff's prior policy violations, justified Plaintiff's termination. Def. Ex. 29, Def. App. 194, 34:19–22. Accordingly, the crux of this case is whether there is a question of material fact as to whether the employer's proffered reasons are pretextual. *See Hilde v. City of Eveleth*, 777 F.3d 998, 1004 (8th Cir.2015) (explaining that when the defendant articulates a legitimate, nondiscriminatory reason for its action, "it is permissible for courts to presume the existence of a prima facie case and move directly to the issue of pretext" (citation omitted)).

Plaintiff's first argument in resistance to summary judgment is that many of his alleged violations of Defendant's policies never occurred. For example, Plaintiff asserts he always wore gloves after the discipline he received in August 2011. Plaintiff also provides that he did not reuse disposable supplies or "put items in an uncovered trash can that belonged in the sharps container." Decl. Rickey Quayle ¶ 6, Pl.App. 16. Plaintiff does not, however, dispute that he sometimes failed to wear gloves before receiving the August 2011 discipline or that he threw away the Superbill. Plaintiff justifies these lapses by noting he did not have to wear gloves at DMS and the document destruction policy was new and he was still getting accustomed to it.

▆▆▆ A negative performance evaluation or disciplinary violations may be pretext for discrimination where a fact issue is raised regarding truth of the allegations. *See Fisher v. Pharmacia & Upjohn*, 225 F.3d 915, 922 (8th Cir.2000). Moreover, "if the proffered reason [for an employee's

termination] is shown by conflicting evidence to be untrue, then the nonmoving party is entitled to all favorable inferences that the false reason given masks the real reason of intentional discrimination." *Loeb v. Best Buy Co.*, 537 F.3d 867, 873 (8th Cir.2008) (alteration and citation omitted). Here, Plaintiff concedes that some of the violations took place. An employee's "justifications for his failure to meet [his employer]'s expectations are not evidence that creates a genuine issue of fact as to whether [the employer]'s reasons were mere pretext." *Haigh*, 632 F.3d at 470. Accordingly, the factual dispute regarding the occurrence of some of the alleged policy violations and whether others where justifiable does not preclude summary judgment.[8]

■■■■■ Plaintiff next suggests that Defendant originally provided that Plaintiff was terminated because of the Superbill incident, but now emphasizes Plaintiff's prior disciplinary records in his personnel file. "Pretext may be shown with evidence that the employer's reason for the termination has changed substantially over time." *Loeb*, 537 F.3d at 873.

In this case, Defendant's proffered reason for Plaintiff's termination has not changed substantially. The May 7, 2012, termination letter provides the "primary reason" for his termination was his destruction of the Superbill. Def. Ex. 30, Def.App. 200. Jaeger testified he terminated Plaintiff because of his "lack of ability to handle the confidentiality of patient privacy on top of all the previous violations." Def. Ex. 29, Def.App. 194, 34:19–22. This testimony is not fundamentally inconsistent with the initial termination letter. *See Amini v. City of Minneapolis*, 643 F.3d 1068, 1076 (8th Cir.2011) (noting that although substantial changes in an employer's proffered reason may show pretext, and employer can elaborate on its proffered reason).

Plaintiff further argues that Defendant's more lenient treatment of other employees indicates that Defendant's proffered explanation for Plaintiff's termination is pretextual. As noted, Plaintiff asserts that Swartz and a doctor also threw away Superbills. Jamie Miller, Defendant's former employee, asserts she told Wharff about the doctor's ostensible misconduct.

■■■■■ "At the pretext stage, the test for whether someone is sufficiently similarly situated, as to be of use for comparison, is rigorous." *Johnson v. Securitas Sec. Servs. USA, Inc.*, 769 F.3d 605, 613 (8th Cir.2014). A reasonable trier of fact could not find that this unnamed doctor is similarly situated to Plaintiff.[9] Plaintiff has not put forward any evidence that this doctor had the same supervisor as Plaintiff or that doctors and lab technicians would

---

8. Moreover, "[t]he critical inquiry in discrimination cases like this one is not whether the employee actually engaged in the conduct for which he was terminated, but whether the employer in good faith believed that the employee was guilty of the conduct justifying discharge. *McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855, 861–62 (8th Cir. 2009). Jaeger testified that he investigated the Superbill incident and the appropriate discipline for Plaintiff by conducting several interviews, including of Plaintiff. Def. Ex. 29. Plaintiff emphasizes that Jaeger terminated Plaintiff without getting his side of the story. The Court notes, "[t]he appropriate scope of investigation is a business judgment, and shortcomings in an investigation do not by themselves support an inference of discrimination." *Id.* at 863. Furthermore, Plaintiff testified that he did tell Jaeger his side of the Superbill story, including that he quickly realized he should not have thrown the Superbill away and that Swartz told him she shredded it. Def.App. 101–02.

9. Miller's affidavit does not provide the age of the doctor. The Court will assume that the unnamed doctor is significantly younger than Plaintiff.

face similar consequences for destroying a doctor's orders. Accordingly, the fact that Defendant did not terminate a doctor who also threw away a Superbill does not demonstrate pretext.

 Given that Plaintiff had essentially the same position and same supervisor as Swartz, Swartz is similarly situated to Plaintiff. *Ridout v. JBS USA, LLC,* 716 F.3d 1079, 1085 (8th Cir.2013) ("The similarly situated co-worker inquiry is a search for a substantially similar employee, not a clone." (quotation marks and citation omitted)). An employee need not commit the "exact same offense" in order to be similarly situated. *Id.* (citing *Lynn v. Deaconess Med. Ctr.–W. Campus,* 160 F.3d 484, 487 (8th Cir.1998)). Rather, the plaintiff "need only establish that he or she was treated differently than other employees whose violations were of *comparable seriousness.*" *Id.* (quoting *Lynn,* 160 F.3d at 488). Plaintiff acknowledges that although he asserts Swartz also threw away Superbills, Plaintiff did not report this to anyone. There is no evidence in the record indicating Defendant was aware of Swartz's alleged conduct. Therefore, it is not material that Defendant did not terminate her for throwing away a Superbill.

 In addition, Plaintiff argues he was treated differently than Swartz because Swartz also received reeducation forms for having food and drink in the lab and leaving the x-ray room door ajar, but she did not receive written discipline and was not terminated. That both Plaintiff and Swartz received reeducation forms rather than disciplinary forms for eating in the lab and leaving the x-ray room door open indicates that Defendant viewed these infractions as less serious than the other policy violations Defendant attributes to Plaintiff. If Defendant had merely given Swartz a reeducation form for failing to wear gloves properly or throwing away a Superbill, then that might suggest pre-

text. However, Swartz received the same reproach, a reeducation form, that Plaintiff received for the same conduct. This does not raise an inference of pretext.

 Plaintiff also argues that his October 2011 performance evaluation indicates he was meeting expectations shortly before his termination. "While favorable performance reviews sometimes provide evidence of pretext … receipt of positive reviews in the past, in and of itself, does not necessarily raise an inference of age discrimination." *Lewis v. St. Cloud State Univ.,* 467 F.3d 1133, 1137–38 (8th Cir.2006) (quotation and citation omitted). When an employer's proffered reasons for an adverse employment action are based on incidents the plaintiff does not dispute or which occurred after a positive evaluation, the fact that the plaintiff once received a positive evaluation does not automatically create the inference that a subsequent adverse employment action is pretextual. *See id.*

 Here, Plaintiff's October 2011 performance evaluation was not entirely positive. Plaintiff received high marks in some categories and low marks in others. Moreover, Wharff issued Plaintiff the evaluation on the same day as Plaintiff received a disciplinary warning. Accordingly, especially given Plaintiff acknowledges that he threw away the Superbill after the evaluation, the fact Plaintiff received a partially positive performance review around eight months before his termination does not create an inference of pretext.

 Plaintiff next suggests the circumstances surrounding Swartz's hiring, including the fact that she replaced him and that she is approximately twenty-seven years younger than Plaintiff, create an inference that Defendant was intent on developing a younger, majority female work-

force. Although it is an element of a prima facie case that the defendant replace the plaintiff with a younger employee, this fact may "possess[ ] 'insufficient probative value to persuade a reasonable jury that [plaintiff] was discriminated against.'" *Carraher v. Target Corp.*, 503 F.3d 714, 719 (8th Cir.2007) (second alteration in original) (quoting *Nelson v. J.C. Penney Co., Inc.*, 75 F.3d 343, 346 (8th Cir.1996)). To show pretext a plaintiff must "demonstrate that the circumstances permit a reasonable inference of discriminatory animus." *Haigh*, 632 F.3d at 470.

 The record is uncontested that although Swartz did not have experience performing lab work before taking the job with Defendant, she did have other relevant experience. Plaintiff has not presented any evidence that allows the reasonable inference that Defendant had discriminatory intent in hiring Swartz or discriminatory animus in terminating Plaintiff and elevating Swartz to fill Plaintiff's position. Accordingly, the circumstances surrounding Swartz's hiring and that she is significantly younger than Plaintiff do not create a triable issue of fact on the issue of pretext.

 Plaintiff's final argument is that a comment Jaeger purportedly made about wanting to "get rid of the old blood," indicates Jaeger had a plan to establish a younger workforce.[10] "Stray remarks [can] constitute circumstantial evidence that, when considered together with other evidence, may give rise to a reasonable inference of age discrimination." *Fisher*, 225 F.3d at 923.[11] However, especially when taken alone, not all stray remarks that may reflect a discriminatory attitude constitute direct or circumstantial evidence of discrimination. *Simmons v. Oce–USA, Inc.*, 174 F.3d 913, 915 (8th Cir.1999). In *Bauer v. Metz Baking Co.*, 59 F.Supp.2d 896, 899 (N.D.Iowa 1999), the court considered an age discrimination claim made by an employee who had received repeated disciplinary warnings. The plaintiff's direct supervisor, who did not have authority to fire her, allegedly made a comment "to the effect that wouldn't [the plaintiff] like to retire so that she could work in her garden or travel." *Id.* at 901. The court concluded that the remark, which occurred at least several months before the plaintiff's termination and was unrelated to the decisional process, could not demonstrate pretext. *Id.* at 909 ("[S]tray remarks that are remote in time do not support a finding of pretext for intentional discrimination." (quotation marks omitted) (quoting *Simmons*, 174 F.3d at 916)).[12]

 Although Jaeger had authority to fire Plaintiff, his statement is not enough to create a triable issue of pretext. Jaeger uttered his statement in a context completely unrelated to Plaintiff several months after his termination. The statement, apparently quickly followed by his clarification that he "meant negative blood," is fairly innocuous. The statement

---

10. Former CHCSI employee Jamie Miller attests that during a status meeting on October 16, 2012, Jaeger told a group of employees that "it's time to get rid of the old blood, we need new ideas." Miller Decl. ¶ 4, Pl.App. 19. According to Miller, when an employee asked if Jaeger was calling her old, Jaeger responded that he meant "negative blood." *Id.* Jaeger denied making this statement. Def. Ex. 29, App. 198–99. For the purpose of this Motion, the Court will assume Jaeger made the statement.

11. *Fisher* held in conjunction with other evidence of pretext comments of the defendant's vice president to the effect that "[w]e need to get rid of the old guys" and another manager's statement that the defendant "wanted to bring some of the younger people along faster" gave rise to an inference of intentional discrimination. *Fisher*, 225 F.3d at 922–23.

12. Plaintiff has not argued that Jaeger's statement constitutes direct evidence of discrimination.

does not clearly articulate a bias against older employees (as opposed to, for example, antipathy towards current employees who were resistant to the direction Jaeger wanted to take the company). *See Hill v. St. Louis Univ.*, 923 F.Supp. 1199, 1215 (E.D.Mo.1996), *aff'd*, 123 F.3d 1114 (8th Cir.1997) (holding a super-visor's statement made after the plaintiff's termination that he wanted "fresh or new blood" in the plaintiff's former position "is simply too vague to create a reasonable inference of age or gender discrimination"). For these reasons, and because of the absence of other evidence of pretext, no reasonable fact finder could conclude Jaeger's comment evidences discriminatory intent.

Moreover, Defendant has presented unrefuted evidence that runs counter to an inference of pretext. Defendant asserts that Jaeger terminated four employees around the same time as Plaintiff. Defendant continues that Jaeger terminated these employees for similar reasons as he terminated Plaintiff, and each of them was under forty years old.[13]

Finally, the Court notes, "this case is illustrative of the general principle that [the Court] 'may not second-guess an employer's personnel decisions ... employers are free to make their own business decisions, even inefficient ones, so long as they do not discriminate unlawfully.'" *Haigh*, 632 F.3d at 470–71 (quoting *Hanebrink v. Brown Shoe Co.*, 110 F.3d 644, 646 (8th Cir.1997)). The Eighth Circuit has observed, "[The ADEA and Title VII] serve the narrow purpose of prohibiting discrimination based on certain, discreet classifications such as age, gender, or race. These statutes do not prohibit employment decisions based upon poor job performance, erroneous evaluations, personal conflicts between employees, or even unsound business practices." *Id.* (alteration in original) (citation omitted). The Court may only consider whether Plaintiff has presented specific facts showing a genuine issue as to whether Defendant's proffered explanation was merely a pretext for unlawful discrimination. The Court cannot question the business soundness of Defendant's employment decision or the propriety of terminating a long-time employee like Plaintiff for Defendant's stated reasons.

In sum, Plaintiff has not pointed to sufficient facts suggesting that age was the but-for cause of his termination. Accordingly, the Court must enter summary judgment for Defendant on Plaintiff's ADEA claim. In addition, Defendant has demonstrated an absence of facts in the record showing pretext. Acknowledging that Plaintiff need not show the age discrimination was the but-for cause of his termination to succeed on his IRCA claim, the Court finds that Plaintiff has not pointed to specific facts that raise a genuine issue as to whether Plaintiff's age was even a motivating factor behind Defendant's decision to terminate him. Accordingly, Defendant is also entitled to summary judgment on Plaintiff's ICRA claim.

### B. Sex Discrimination Claim

As the parties have presented the same arguments regarding Plaintiff's ICRA and Title VII sex discrimination claims, the Court will analyze the claims together "under the same analytical framework used for Title VII claims." *Ames v. Nation-*

---

**13.** Plaintiff provides he is without knowledge or information to admit or deny these allegations. To avoid summary judgment, if the movant demonstrates an absence of a genuine dispute of fact, the nonmovant "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Torgerson*, 643 F.3d at 1042 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

*wide Mut. Ins. Co.*, 760 F.3d 763, 767 (8th Cir.2014); *see Falczynski v. Amoco Oil Co.*, 533 N.W.2d 226, 230 n. 2 (Iowa 1995).

Because Plaintiff has not produced direct evidence of discrimination, to survive summary judgment, he must create an "inference of discrimination under the burden-shifting framework of *McDonnell Douglas Corp.*" *Ames*, 760 F.3d at 767. First, he must show "that: (1)[he] is a member of a protected group; (2)[he] was qualified for [his] position; (3)[he] suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination." *Id.* The parties agree that "[b]ecause this is a claim of reverse discrimination, [Plaintiff] must also prove [Defendant] 'is the unususal employer who discriminates against the majority.'" *Moody v. Vozel*, 771 F.3d 1093, 1097 (8th Cir.2014) (quoting *McGinnis*, 496 F.3d at 875). If Plaintiff makes these showings, "[t]he burden then shifts to defendant to articulate a legitimate, nondiscriminatory reason for its action. If defendant meets that minimal burden, plaintiff must show that the proffered nondiscriminatory reason is merely a pretext for unlawful ... discrimination." *Fiero v. CSG Sys., Inc.*, 759 F.3d 874, 878 (8th Cir.2014) (quoting *Putman v. Unity Health Sys.*, 348 F.3d 732, 735 (8th Cir. 2003)).

As discussed above, although it is a close question, the Court finds that Plaintiff has made out a prima facie case. He is alleging discrimination against him because of his sex, and he notes that although Jaeger decided to terminate him, Jaeger himself was later fired and . replaced with a woman. The Court concludes that his significant experience demonstrates he is qualified for his position. He clearly suffered an adverse employment action. The fact that Swartz replaced him creates at least some minimal

suggesting of discrimination. Moreover, as above, Plaintiff's claim ultimately fails because he cannot demonstrate pretext. *See Fiero*, 759 F.3d at 878 (assuming without deciding that the plaintiff made out a prima facie case of sex discrimination and proceeding to consider the employer's proffered justification and evidence of pretext); *see also Moody*, 771 F.3d at 1097 (same). For the reasons discussed above, Defendant has met its minimal burden to show a legitimate, nondiscriminatory reason for Plaintiff's termination.

Plaintiff puts forward essentially the same arguments described above to show that Defendant's stated reasons for Plaintiff's termination are a pretext for sex discrimination. Plaintiff emphasizes Defendant's decision to hire Swartz despite her lack of experience doing lab work and Swartz's significant role in reporting the Superbill issue to management. As explained, Plaintiff has not pointed to any facts that would permit an inference that the circumstances surrounding Swartz's hiring indicate Defendant acted on the basis of discriminatory animus.

Furthermore, Defendant again points to evidence that runs counter to the inference of sex discrimination. Within five months of Plaintiff's termination, and before Defendant received Plaintiff's Iowa Civil Rights Commission complaint, Jaeger fired four other employees. Three of the other employees were female.

Plaintiff has not come forward with specific facts showing a genuine issue as to whether Defendant's proffered explanation was merely a pretext for sex discrimination. Accordingly, the Court must find Defendant is entitled to summary judgment on Plaintiff's state and federal sex discrimination claims.

## III. CONCLUSION

For the reasons stated, the Court must **grant** Defendant's Motion for Summary

Judgment, ECF No. 18, and the above-entitled action is **dismissed**.

**IT IS SO ORDERED.**